## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**NORMAN E. SCHUCHMAN and**
**GLENNA SCHUCHMAN,**

      **Plaintiffs,**

**v.**

**STATE AUTO PROPERTY AND**
**CASUALTY INSURANCE COMPANY,**

      **Defendant.**                    **No. 10-cv-1024-DRH-PMF**

### MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I.    INTRODUCTION

Pending before the Court are the parties' cross motions for summary judgment. Plaintiffs Norman E. Schuchman and Glenna Schuchman (Collectively, plaintiffs) allege defendant State Auto Property and Casualty Insurance Company wrongfully denied their claim for coverage of fire damage to the insured dwelling, 109 W. 14th Street. Defendant states it rightfully denied coverage of the fire damage, as plaintiffs were not residing in 109 W. 14 Street at the time of fire, as required by the express terms of the policy. For the reasons set forth below, the Court **GRANTS** defendant's motion (Doc. 19) and **DENIES** plaintiffs' motion (Doc. 17).

## II.  BACKGROUND

The instant dispute arises from fire damage caused to plaintiffs' house, 109 W. 14th Street, Junction City, Illinois, on May 23, 2010. Plaintiff Glenna Schuchman (Glenna)[1] purchased the parcel of land on which the subject home is located in 1980. The land consists of eight lots of Block 45 in the Illinois township of Junction City. At the time of purchase, the subject home and two sheds were situated on the property (Doc. 19-1, p. 25).

The home, in which Glenna and eventually her husband, plaintiff Norman E. Schuchman (Norman) initially resided, had a mailing address of Rural Route 1 at the time of Glenna's purchase. In 1988 or 1989, plaintiffs moved a mobile home onto the property where Glenna's mother resided. A year or two later, plaintiffs moved a second mobile home onto the property where Glenna's step-father resided. The mobile homes were assigned a mailing address of Rural Route 2 (Doc. 19-1, pp. 28-29). At some point prior to 1993, the subject house was assigned a mailing address of 109 W. 14th Street, Junction City, Illinois; one mobile home was assigned a street address of 1406 Madison Avenue; the other 1408 Madison Avenue (Doc. 19-1, pp. 29-30). Plaintiffs state a title search of both 1408 Madison Avenue and 109 W. 14th Street reveal the entire tract of land is one contiguous lot (*See* Doc. 18-1, Ex. G, p. 17). Further, plaintiffs pay taxes based on the property as a whole (Doc. 18-1, Ex. H, p. 20).

---

[1] Due to illness, plaintiff Norman E. Schuchman was unable to give a deposition. Plaintiff Glenna Schuchman has authority to act as power of attorney over her husband with respect to all aspects of these proceedings (*See* Doc. 19-3). Thus, when the Court refers to "plaintiffs" it is generally referring to the statements of Glenna Schuchman as stated at her deposition.

In 2000, plaintiffs purchased from defendant, through Hudson-Gray Insurance Agency, Inc., a homeowners insurance policy for 109 W. 14th Street; the terms of which govern the instant dispute. Although plaintiffs admittedly resided at 109 W. 14th Street in 2000, plaintiffs' insurance application lists 1408 Madison Avenue as their mailing address. Plaintiffs' application additionally indicates 109 W. 14th Street as plaintiffs' primary, owner-occupied dwelling. It further indicates plaintiffs do not have any other "residence" (Doc. 19-1, pp. 87-88). Plaintiffs' coverage under the disputed policy continued until the date of the fire.

The relevant provisions of the policy are as follows:

**DEFINITIONS**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**11.** "Residence premises" means:
**a.** The one family dwelling where you reside;
**b.** The two, three or four family dwelling where you reside in at least one of the family units; or
**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.
"Residence premises" also includes other structures and grounds at that location.

. . .

**SECTION I – PROPERTY COVERAGES**

**A. Coverage A – Dwelling**

**1.** We cover:
>**a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
>**b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

. . .

**SPECIAL PROVISIONS**

(a) The described dwelling is not seasonal; (b) no business pursuits are conducted on the described premises; (c) the **residence premises** is the only premises where you maintain a residence other than business or farm properties; (d) the Insured has no full time residence employee(s); (e) the Insured has not [sic] outboard motor(s) or watercraft otherwise excluded under this policy for which coverage is desired. Exception, if any, to (1) [sic], (b), (c), (d) or (e) [are] entered in Special Provisions section on Declarations. Absence of an entry means "no exceptions."

(Doc. 19-2, pp. 23-24, 42).

The relevant portion of the Declarations page of the policy states:

>THE PREMISES COVERED BY THIS POLICY IS LOCATED 109 WEST 14TH ST JUNCTION CITY, IL 62882.

>RATING INFORMATION- FORM 3, FRAME CONSTRUCTED IN 1945, SECURGARD, PRIMARY RESIDENCE, PROTECTION CLASS 06, TERRITORY 051, FEET FROM HYDRANT 1000, FIRE STATION 3 MILES, $500 SECTION I LOSS DEDUCTIBLE, 1 FAMILY INSIDE CITY.

(Doc. 19-2, p. 17).

At some point after 2000 but before 2005, plaintiffs moved two more mobile homes onto the property. At that time, plaintiffs moved from 109 W. 14th

Street into the two newer mobile homes, where they are "currently residing" (Doc. 19-1, p. 32). Their intention was to maintain a single level residence in their retirement, as 109 W. 14th Street is a two level home. The two newer mobile homes were additionally assigned the street address of 1408 Madison Avenue; thus, three mobile homes total bear that address. The two newer mobile homes are situated approximately 150 to 200 feet from 109 W. 14th Street. Upon Glenna's mother and stepfathers' deaths, plaintiffs began using the mobile home located at 1406 Madison Avenue and the older mobile home located at 1408 Madison Avenue as storage. Plaintiffs' ownership of 109 W. 14th Street continued (Doc. 19-1, pp. 30-38).

At Glenna's deposition, she testified concerning a conversation she had with Mike Wethington (Wethington), her insurance agent, concerning the move from 109 W. 14th Street to the two mobile homes at 1408 Madison Avenue. Glenna stated that Wethington informed her defendant did not insure mobile homes. Thus, plaintiffs obtained a separate insurance policy to cover the two newer mobile homes at 1408 Madison Avenue (Doc. 19-1, pp. 44-46).

Shortly after plaintiffs moved from 109 W. 14th Street to 1408 Madison Avenue, plaintiffs' son, Richard Schuchman (Richard), moved into 109 W. 14th Street. At that time, plaintiffs were unsure of the intended length of Richard's residence at the subject home. However, Richard moved out of the residence in 2008 (Doc. 19-1, p. 17). At that time, plaintiffs had the gas and water turned off, but kept the electric service active for purposes of general upkeep. Glenna

testified that between Richard's departure in 2008 and the fire of 2010, plaintiffs never cooked or ate a meal, nor did they spend the night at 109 W. 14th Street. Plaintiffs entered the house approximately once a month, stored personal property there, and engaged in its general maintenance, including lawn work (Doc. 19-1, pp. 18-24).   Generally, upon Richard's departure, plaintiffs considered remodeling and reoccupying 109 W. 14th Street.   However, plaintiffs had no definite plans to take up residence in the subject home, as their intent in moving to the two newer mobile homes at 1408 Madison Avenue was to stay there indefinitely (Doc. 19-1, p. 43). Similarly, upon learning of Norman's terminal cancer diagnosis a few weeks prior to the fire, Glenna again "kicked around" the idea of remodeling and moving back into 109 W. 14th Street, but took no affirmative steps in that regard (Doc. 19-1, pp. 40-42).

On May 23, 2010, a fire broke out at 109 W. 14th Street, damaging the building and its contents. Plaintiffs filed an insurance claim with defendant. Defendant agreed to provide coverage for the contents of plaintiffs' home, as the relevant policy extends to personal property anywhere in the world (*See* Doc. 19-2, p. 25). However, on October 1, 2012, defendant denied plaintiffs' claim for coverage of the damage to the building itself. In reliance on the above-cited policy provisions, defendant stated:

> Our investigation has revealed that neither of the named insureds, Glenna or Norman Schuchman, was residing at the home at 109 W. 14th Street, Junction City, Illinois, at the time of the fire. Therefore, at the time of the fire loss, the home at 109 W. 14th Street was not being used as your "residence premises," as that term is defined in the insurance policy. Furthermore, our investigation has revealed

that you were maintaining a residence in a location other than the premises described in [defendant's] insurance policy and this is a violation of subsection (c) of the Special Provisions [of the policy].

(*See* Doc. 2-2, Ex. B, p. 65). Thus, plaintiffs filed the instant three count complaint in Marion County, Illinois on November 17, 2010 (Doc. 2-2). Defendant properly removed to this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332, on December 17, 2010 (Doc. 2). Thereafter, the parties filed the instant cross-motions for summary judgment which are now ripe for resolution (Pltfs. Mtn. Doc. 17, Def. Resp. Doc. 22; Def. Mtn. Doc. 19, Pltfs. Resp. Doc. 20, Def. Reply Doc. 23).

Plaintiffs' Count I is an action for declaratory judgment, asking the Court to declare that plaintiffs did not breach any provision of the insurance policy and that they are entitled to insurance coverage for the repair and replacement of 109 W. 14th Street. Count II is an action for damages, alleging defendant's breach of the insurance policy. In addition to the actual loss suffered, plaintiffs seek punitive damages. Finally, Count III seeks penalties and attorney's fees under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155 (West 2008) (Doc. 2-2).

Plaintiffs' instant motion requests that this Court find that plaintiffs resided at the "residence premises" at the time of the loss, were not maintaining a residence at a different premises, and that defendant's coverage of the damaged dwelling was in full force and effect at the time of the fire (Doc. 18). Defendant's motion requests summary judgment in its favor as to all three of plaintiff's counts,

as the damaged dwelling was not a "residence premises" as that term is defined in the policy and plaintiffs' violated the "special provisions" of the policy by maintaining a residence other than 109 W. 14th Street (Doc. 19).

### III.   <u>LEGAL STANDARD</u>

Summary judgment is proper where the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). As this case is before the Court pursuant to diversity jurisdiction and centers on the construction of an insurance policy involving property located in Illinois, the substantive law of Illinois controls the instant dispute. *See Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938); *Auto. Fin. Corp. v. Smart Auto Center, Inc.,* 334 F.3d 685, 688 (7th Cir. 2003). Further, under Illinois law, construction of an insurance policy is a question of law, suitable for disposition through summary judgment. *T.H.E. Ins. Co. v. City of Alton,* 227 F.3d 802, 805 (7th Cir. 2000) (applying Illinois law).

## IV.   ARGUMENT AND APPLICATION

### a.  Count I: Declaratory Judgment

#### i. "Residence Premises"

The parties seek judicial resolution of the term "residence premises" as used in the controlling insurance policy. "In construing an insurance policy, a court must ascertain the intent of the parties to the contract." *Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8,* 314 F.3d 895, 900 (7th Cir. 2002) (applying Illinois law) (citation omitted). In ascertaining the meaning of the policy's words and the parties' intent, a court must "construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract." *Id.* (citing *Zurich Ins. Co. v. Raymark Indus., Inc.,* 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150 (1987); *Dora Township v. Ind. Ins. Co.*, 78 Ill.2d 376, 36 Ill.Dec. 341, 400 N.E.2d 921 (1980)). Illinois law requires interpretation of insurance agreement provisions within the factual context of the case. *Putzbach v. Allstate Ins. Co.*, 143 Ill.App.3d 1077, 98 Ill.Dec. 265, 494 N.E.2d 192, 195 (1986).

Further, if words contained in an insurance policy are susceptible to more than one reasonable interpretation, they are ambiguous; thus, the court must construe them against the insurer who drafted the policy. *Indiana Ins. Co.,* 314 F.3d at 902 (citing *United States Fid. & Guar. Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926, 930 (1991); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204, 1212

(1992)). An ambiguous provision is one reasonably susceptible to multiple interpretations. *In re Osborne,* 327 Ill.App.3d 249, 261 Ill.Dec. 606, 763 N.E.2d 855, 857 (2002). A court must afford unambiguous provisions their plain, ordinary, and popular meaning. *Employers Ins. of Wausau v. James McHugh Constr. Co.,* 144 F.3d 1097, 1104 (7th Cir. 1998) (applying Illinois law). Moreover, "a court should consider the plain meaning of the policy language and should not search for a nonexistent ambiguity." *Indiana Ins. Co.,* 314 F.3d at 902 (citing *Dash Messenger Serv., Inc. v. Hartford Ins. Co.,* 221 Ill.App.3d 1007, 164 Ill.Dec. 313, 582 N.E.2d 1257, 1260 (1991)).

Plaintiffs contend the term "residence premises" is ambiguous; thus, the Court should construe its meaning in their favor. As cited above, the relevant policy defines "residence premises" in two parts: (1) it is the one, two, three, or four family "dwelling where you reside" or "[t]hat part of any of building where you reside" *and* (2) "which is shown as the 'residence premises' in the Declarations. 'Residence premises' also includes other structures and grounds at that location" (Doc. 19-2, p. 24).  Importantly, plaintiffs do not contend that they resided at 109 W. 14th Street at the time of the fire, which they correctly refer to as the "insured dwelling."  Plaintiffs state they "were living in a structure, the mobile home, on the same grounds as the house, the insured dwelling, which sustained the fire loss. Accordingly, plaintiffs contend they were residing on the 'residence premises' as the policy defined that term" (Doc. 18, p. 9). The fact the mobile home and the

insured dwelling possess separate addresses, plaintiffs argue, does not alter the fact they resided in a "structure" at the same "location" as the insured dwelling.

In support of plaintiffs' interpretation, they contend "residence premises" is ambiguous; thus, their reasonable interpretation of "residence premises" is controlling. Plaintiffs rely on *FBS Mortg. Corp. v. State Farm Fire and Casualty Co.,* 833 F. Supp. 688 (N.D. Ill. 1993) (Duff, J.) (applying Illinois law), and *Lundquist v. Allstate Ins. Co.*, 314 Ill.App.3d 240, 247 Ill.Dec. 572, 732 N.E.2d 627, 633 (2000). In *FBS,* the district court held "residence premises" was ambiguous in relation to an incarcerated insured. Similarly to the instant case, the insurance company denied coverage of the insured dwelling, as it found the incarcerated insured was not using the dwelling as his "residence premises." However, dissimilarly to the instant case, the insured alleged that he was in fact residing in the insured dwelling, despite his incarceration. The court agreed, holding that the insured dwelling was still the insured's residence, despite his temporary, involuntary physical absence, as his actions indicated his intent to maintain the dwelling as his "residence premises." *FBS*, 833 F. Supp. at 693-94.

In a similar vein, the court in *Lundquist* discussed the ambiguous meaning of "reside," as it was unclear what amount of physical presence was required to render the insured dwelling within the policy's coverage. The policy defined "dwelling" as "a one, two, three, or four family building structure, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence." Vandals set the insured dwelling on fire.

The defendant insurance company refused coverage of the fire loss in part because it alleged the insureds did not "reside" in the dwelling. While the insureds did not use the home as their full-time residence at the time of the fire, there was evidence that the insureds and their sons stayed overnight and ate meals at the residence on multiple occasions, and stored numerous belongings there. In reliance on *FBS,* the appellate court found the term "reside" was ambiguous, as it was unclear what degree of physical presence was necessary to hold that a person "resides" in a particular location. *Lundquist,* 732 N.E.2d at 633.

Defendant distinguishes *FBS* and *Lundquist* from the instant dispute, as the critical question is not whether plaintiffs "resided" at the insured dwelling at the time of the fire. Instantly, the relevant inquiry turns on whether the mobile homes where plaintiffs currently "reside" and resided at the time of the fire are part of the "premises" encompassed within the policy's definition of "residence premises."   The Court agrees that *FBS* and *Lundquist* are not helpful to the resolution of whether "residence premises" is ambiguous in this context, as the Court is not instantly called upon to determine whether plaintiffs "resided" at 109 W. 14th Street.[2]

---

[2] Plaintiffs do not contend they "resided" at 109 W. 14th Street at the time of the fire. However, the Court notes that even if plaintiff did make such a contention, the undisputed facts demonstrate plaintiffs did not "reside" at 109 W. 14th Street at the time of the fire. "'Resident' is generally understood to include intent and permanency of abode in addition to mere physical presence. *Coriasco v. Hutchcraft,* 245 Ill.App.3d 969, 615 N.E.2d 64, 65 (1993). The controlling factor is intent, as evidenced by the acts of the person whose residency is questioned. *Cincinatti Ins. Co. v. Argubright,* 151 Ill.App.3d 324, 104 Ill.Dec. 371, 502 N.E.2d 868, 872 (1986). The actions of plaintiffs regarding their use of 109 W. 14th Street at the time of the fire do not demonstrate the requisite intent necessary to render 109 W. 14th Street their "residence." Glenna testified that no one has lived at 109 W. 14th Street since 2008. At that time, plaintiffs disconnected the water and gas, but kept on the electricity. The house did not have heat for the two winters prior to the fire. Since 2008, plaintiffs have not spent the night or cooked a meal at 109 W. 14th Street. Plaintiffs

Plaintiffs' response to defendant's motion additionally cites *General Cas. Co. of Illinois v. Olsen,* 56 Ill.App.3d 986, 372 N.E.2d 846 (1977), as holding "residence premises" is ambiguous in the context of the instant dispute. In *Olsen,* the homeowner's policy covered the "south side of North St 5th house W of Main St of Bristol, Kendall County." Thus, the court noted the policy did not contain a legal description of the insured dwelling.  The policy excluded coverage of bodily injury or property damage arising out of the maintenance or use of any recreational motor vehicle if the bodily injury or property damage occurred "away from" the "residence premises." It further defined "residence premises" as "(1) a one or two family dwelling building, appurtenant structures, grounds and private approaches thereto . . . provided that such premises is used as a private residence by the Named Insured or his spouse but excluding any portion of the premises used for business purposes." *Id.* at 988-89.

In determining the terms "away from" and "residence premises" ambiguous, the court noted, "[w]hile there is some disparity of decisions regarding the interpretation of the words 'away from' and 'residence premises,' we find, under the facts of this case, that the policy exclusion at issue here dealing with the interpretation of the words 'away from' and the definition of 'residence premises' is, in fact, ambiguous." *Id.* at 990.

---

used the home for storage. Plaintiffs entered the home approximately once a month, for the sole purpose of retrieving items stored there. Thus, plaintiffs' intent did not demonstrate permanency of abode or physical presence at 109 W. 14th Street on the relevant date. *See Farmers Auto. Ins. Ass'n v. Gitelson,* 344 Ill.App.3d 888, 801 N.E.2d 1064, 1070 (2003) (compiling Illinois cases demonstrating the facts instantly at issue are inadequate to indicate plaintiffs' intent to maintain the insured dwelling as a "residence").

Defendant again distinguishes *Olsen* on its facts, as instantly a similar exclusion is not at issue and the instant policy includes a legal description of the insured dwelling. The Court agrees. While the facts of *Olsen* are slightly more relevant to instant dispute than those of *FBS* and *Lindquist*, a similar exclusion is not at issue. *Olsen* determined "residence premises" was ambiguous when coupled with "away from." However, the court was not called upon to determine what portion of the plaintiff's property was encompassed within the policy's definition of "residence premises." Further, *Olsen* is especially distinguishable given the non-legal description of the insured premises at issue. Thus, the Court does not find *Olsen* holds the term "residence premises" is ambiguous in the context of the instant dispute.

Defendant correctly argues that the crux of plaintiffs' argument centers on the policy's inclusion of "other structures and grounds *at that location*" in its definition of "residence premises." Plaintiffs hone in on this language as declaring that the unattached mobile homes at 1408 Madison Avenue are encompassed within the term "residence premises." Defendant states the definition of "residence premises" unambiguously refers solely to 109 W. 14th Street and does not encompass 1408 Madison Avenue. In support, defendant cites to the policy's language. As previously stated, the policy defines "residence premises" as "the one family dwelling *where you reside . . . and* which is shown as the 'residence premises' in the Declarations." The Declarations refer solely to 109 W. 14th Street. Thus, defendant argues, the inclusion of "other structures and grounds at

*that* location," again refers solely to 109 W. 14th Street. Accordingly, defendant concedes the mobile homes at 1408 Madison Avenue are "structures." However, the "structures" are not at the "location" of 109 W. 14th Street.

In support of defendant's interpretation of "residence premises" as referring solely to 109 W. 14th Street, defendant cites *Howard Foundry Co. v. Hartford Fire Ins. Co.,* 222 F.2d 767 (7th Cir. 1955) (applying Illinois law), and *Niedringhaus v. Aetna Life Ins. Co.,* 235 Ill.App. 335 (1925).  While these cases are of notable vintage, they stand for the general proposition that an insurance contract which describes the insured property in specific terms, cannot be construed as applying to property that does not fall within the specific description. *Howard Foundry,* 222 F.2d at 770 ("Plaintiff would have us ignore the clear recital of acreage and section number in the policy. On the state of this record we think it unnecessary to narrate evidence presented below purporting to demonstrate intention of the contracting parties, or of a unilateral or mutual mistake."); *Niedringhaus,* 235 Ill.App. at 337 ("The language of the policy being chosen by the insurer, it should be construed, if practicable, so as to cover the subject-matter intended to be covered, and a policy which describes the property in comprehensive terms, or under a general description, covers whatever is commonly known by such general name or is necessarily or reasonably presumed to be within the terms used and within the intention of the parties. But the description will not be extended so as to include property plainly not within the terms of the policy.").

Plaintiffs distinguish these cases, as instantly the fire damaged the insured dwelling, 109 W. 14th Street, not the mobile homes at 1408 Madison Avenue. Plaintiffs are ignoring the logical conclusion of their own argument. Plaintiffs contend that the insurance policy requires only that they reside on the "residence premises," but does not construe this term as solely encompassing 109 W. 14th Street.   However, to reiterate, the policy's two part definition of "residence premises," includes: 1. the dwelling where you reside *and* 2. which is shown as the "residence premises" in the Declarations, including other structures and grounds at that location. Thus, in arguing "residence premises" includes 1408 Madison Avenue, plaintiffs are attempting to expand "residence premises" to include a dwelling with an address not specifically listed in the Declarations. Thus, the general statements of *Howard Foundry* and *Niedringhaus* are instructive, as they note that when an insurance policy describes property by a specific description, as in an address, it should not be construed as encompassing other addresses not specifically stated in the policy.

Plaintiffs request that the Court construe "residence premises" as encompassing the mobile homes at 1408 Madison Avenue, as they are at the same "location" as 109 W. 14th Street. Plaintiffs define "location" in reference to county records and property taxes. However, the controlling insurance contract does not define "location" in such terms. Again, the "residence premises" is the dwelling where the insured resides *and which is shown as the "residence premises"* in the Declarations. "Residence premises" includes other structures and grounds at *that*

location. The Declarations state the "premises" covered by this policy are "located" at 109 W. 14th Street. As opposed to lots, sections, title searches, or tax records, the insurance policy uses an address to describe the premises insured under the policy. Thus, "location" refers to the address listed in the Declarations. The Declarations do not refer to 1408 Madison Avenue, even though this address was in use at the time the parties entered into the contract. Plaintiffs' insurance application similarly refers solely to 109 W. 14th Street, described as the single-family, primary dwelling of the applicants.[3]

Thus, "residence premises" unambiguously describes the home at 109 W. 14 Street; it does not encompass the mobile homes at 1408 Madison Avenue. When plaintiffs moved from the dwelling at 109 W. 14th Street to the dwelling at 1408 Madison Avenue, plaintiffs obtained a separate insurance policy to cover the mobile homes. Accordingly, the parties clearly understood that the instant insurance policy had no application to the mobile homes at 1408 Madison Avenue. It is well-settled that the Court should "not search for a nonexistent ambiguity." *Indiana Ins. Co.*, 314 F.3d at 902. It is clear from the intent of the parties, as evidenced in the insurance application and the policy's terms taken as

---

[3] The Court notes that the insurance application lists 1408 Madison Avenue as plaintiffs' mailing address. However, it is noted that the mobile homes where plaintiffs resided at the time of the fire were not in existence at the time the parties entered into the insurance contract. Plaintiffs do not dispute that 109 W. 14th Street was their sole residence at the time they entered into the insurance contract. Further, the application clearly refers solely to 109 W. 14th Street as the only dwelling to be insured under the insurance policy. Plaintiffs vaguely argue that defendant was required to inquire as to why plaintiffs listed a different address as their mailing address. However, as this argument is undeveloped and unsupported by relevant legal authority, the Court does not consider it. *See* SDIL-LR 7.1(d).

a whole, "residence premises" does not encompass 1408 Madison Avenue, but refers solely to 109 W. 14th Street. *Id.* at 900.

Additionally, in a seemingly alternative vein, plaintiffs argue that the policy's coverage is not contingent upon plaintiffs' residence at 109 W. 14th Street. Plaintiffs state that if the policy made coverage contingent upon occupancy or use of the dwelling as a residence it would state, "we cover the dwelling on the 'residence premises' *which you reside in*," as opposed to the language; "we cover . . . [t]he dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling."[4]    However, as stated repeatedly, the definition of "residence premises" clearly states the "dwelling *where you [the insured] reside*" *and* "which is shown as the 'residence premises' in the Declarations."

Illinois courts have not expressly addressed whether the words "where you reside" in a home-owner's insurance policy requires residency. However, as defendant highlights, the court in *Lundquist* impliedly held that residency in the insured dwelling was required in reliance on similar language. *See Lundquist,* 732 N.E.2d at 632. The policy similarly defined "dwelling" as "a one, two, three, or four family building structure, identified as the insured property on the Policy Declarations, *where you reside* and which is principally used as a private residence." The defendant argued that the policy did not provide coverage in part because the insureds were not residing in the dwelling at the time of the fire. As

---

[4] The Court reiterates that Glenna stated at her deposition that the mobile homes at 1408 Madison Avenue are approximately 150 to 200 feet from 109 W. 14th Street (Doc. 19-1, p. 54). Thus, plaintiffs do not argue that the mobile homes were "attached" to 109 W. 14th Street.

explained above, the court determined "reside" was ambiguous, as it was unclear what level of physical presence was required. Thus, the court's reasoning presumed that residency was required under the policy. *Id.*

Further, while not binding on the instant dispute, numerous courts have expressly noted that the language "where you reside" requires residency in the insured dwelling. *See Mahens v. Allstate Ins. Co.,* 447 F. App'x 51, 55 (11th Cir. 2011) (applying Georgia law) ("'where you reside' . . . plainly and unambiguously required [insureds] to reside at property listed on the policy"); *Shepard v. Keystone Ins. Co.,* 743 F. Supp. 429, 431 (D. Md. 1990) (policy defined "residence premises" as "one or two family dwelling and grounds, or that part of any other building where you reside and which is shown as the residence premises" in the declaration; thus, "the contract specifically requires that this property be a dwelling in which the insured is living"); *Heniser v. Frankenmuth Mut. Ins. Co.,* 534 N.W.2d 502, 510 (Mich. 1995) (policy defined "residence premises" as "the one family dwelling, other structures and grounds; or that part of any building; where you reside and which is shown as the 'residence premises' in the Declarations;" thus, "[c]overage [was] predicated on two separate requirements: the insured must reside at the insured premises, and the premises must be listed in the declarations section."); *McGrath v. Allstate Ins. Co.,* 802 N.W.2d 619, 622-23 (Mich. App. 2010) ("definition of 'residence premise' uses the word 'dwelling,' which is specifically defined as a building structure '*where you reside* and which is principally used as a private residence' . . . 'where you reside'

. . . is not merely an affirmative warranty, but requires the insured reside at the premises at the time of the loss"); *Williamson v. Standard Fire Ins. Co.*, C.A. No. 04C-07-033 RFS, 2005 WL 6318348, *4 (Del. Super. Ct. Aug. 19, 2005) (policy's definition of "[r]esidence premises" as "the one or two family dwelling, other structures, and grounds or that part of any building *where you reside* and which is shown as the 'residence premises' in the Declarations," required residency); *Grange Mut. Cas. Co. v. DeMoonie*, 490 S.E.2d 451, 453-54 (Ga. App. 1997) (concluding that a residency requirement existed where the policy defined the covered premises as "the one or two family dwelling where you reside"); *Georgia Farm Bureau Mut. Ins. Co. v. Kephart*, 439 S.E.2d 682, 683 (Ga. App. 1993) (determining that a residency requirement existed where the insurance policy defined the covered "residence premises" as "the one family dwelling, other structures, and grounds; or . . . that part of any other building; where you reside").

The Court finds the reasoning of these cases persuasive. The parties to the instant contract clearly intended that plaintiffs reside at 109 W. 14th Street. The insurance application lists 109 W. 14th Street as plaintiffs' primary, single-family, owner-occupied dwelling.  Further, the Declarations refer to 109 W. 14th Street as plaintiffs' "primary residence." Thus, the risks contemplated under the subject policy clearly presumed plaintiffs would reside at 109 W. 14th Street. Plaintiffs do not contend they resided at 109 W. 14th Street at the time of the fire. Thus, assuming *arguendo* that plaintiffs are correct in that "at that location" is

ambiguous and thus should encompass the mobile homes at 1408 Madison Avenue, they were still required under the policy's express terms to reside at 109 W. 14th Street, as "residence premises" is defined as the "dwelling *where you reside*" and which is shown as the "residence premises" in the declarations. Thus, in sum, "residence premises" unambiguously refers to 109 W. 14th Street and does not encompass the mobile homes at 1408 Madison Avenue. Moreover, plaintiffs were required under the contract's terms to reside at 109 W. 14th Street.

### ii. Special Provisions

Additionally, the policy's inclusion of "special provision," "(c) the **residence premises** is the only premises where you maintain a residence other than business or farm properties," further bolsters the Court's finding that plaintiffs were required under the policy's terms to use 109 W. 14th Street as their residence. Plaintiffs contend they were not "maintaining a residence in a location other than the premises described in [defendant's] insurance policy, . . . in violation of subsection (c) of the Special Provisions." Plaintiffs again reiterate that a title search demonstrates 109 W. 14th Street and 1408 Madison Avenue both relate to the same tract of land and plaintiffs pay taxes based on the land as a whole. Therefore, plaintiffs state they reside at the same "location" as the insured dwelling, as "location" is not synonymous with address.

Plaintiffs' argument ignores the actual terms of the policy. The special provision does not use the word "location." It uses the term "premises." The

Declarations state the "premises" covered under the policy is 109 W. 14th Street. Moreover, as explained above, "residence premises" refers solely to 109 W. 14th Street. Additionally, the relevant insurance application asks, "[a]ny other residence owned, occupied, or rented?" Plaintiffs marked the "no" box (Doc. 19-1, p. 88). Clearly, the parties intended 109 W. 14th Street's use as plaintiffs' sole residence. Thus, the special provision unambiguously required that plaintiffs use 109 W. 14th Street as their sole residence.

Although the Court again notes its holding is not binding on the instant dispute, the reasoning of *Kephart* is persuasive as it construed a very similar policy and held the insured was required to maintain the insured dwelling as her sole residence. *See Kephart,* 439 S.E.2d at 425. In *Kephart,* the policy covered, "the dwelling on the residence premises shown in the Declarations, including structures attached to the dwelling . . . 'Residence premises' [was] defined in the policy as 'a. the one family dwelling, other structures, and grounds; or b. that part of any other building; where you reside and which is shown as the 'residence premises' in the Declarations." Further, in a paragraph captioned "special provisions" the policy required that unless noted as an exception in the declarations, "the residence premises [must be] the only premises where the named insured or spouse maintains a residence other than business or farm properties." *Id.* at 683. The insured was not living in the dwelling listed in the declarations. Thus, "[s]ince the policy cover[ed] only the property listed in the declarations and only when the insured reside[d] in those premises exclusively, no

coverage was afforded [to the insured]," as this was the specifically contracted result. *Id.* at 684. Instantly, plaintiffs' and defendant agreed to a similar result.

At Glenna's deposition, throughout plaintiffs' instant motion, and in plaintiffs' complaint, plaintiffs admit that they currently reside at the mobile homes located at 1408 Madison Avenue and that they resided at 1408 Madison Avenue at the time of the fire (*See* Doc. 19-1, p. 32; Doc. 19-1, p. 43; Doc. 2-2, p. 3). Thus, plaintiffs were maintaining a residence other than 109 W. 14th Street at the time of the fire. Accordingly, defendant's denial of coverage under the policy's unambiguous terms was not wrongful. Thus, defendant is entitled to summary judgment on Count I of plaintiffs' complaint, as "residence premises" refers to 109 W. 14th Street and plaintiffs were maintaining a residence at 1408 Madison Avenue at the time of the fire. Accordingly, defendant's denial of coverage was not wrongful.

 **b. <u>Counts II and III: Money Damages and Section 155 Damages</u>**

Plaintiffs' Count II seeks breach of contract damages, including punitive damages, from defendant. In *Cramer v. Ins. Exch. Agency,* 174 Ill.2d 513, 675 N.E.2d 897, 904 (1996), the Illinois Supreme Court held that a plaintiff can recover punitive damages from an insurance company if the company committed a separate common law tort, such as fraud. The plaintiff must allege and prove the elements of the separate tort; "[m]ere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute such a tort." *Id.* As stated above, defendant's denial of coverage under the instant policy was not

wrongful. Accordingly, plaintiffs have not proven defendant acted in bad faith, let alone committed a separate tort warranting punitive damages. Thus, as defendant did not breach the insurance contract, plaintiff is not entitled to money damages. Accordingly, defendant is entitled to summary judgment on plaintiffs' Count II.

Finally, plaintiffs' Count III seeks penalties and attorneys' fees under Section 155 of the Illinois Insurance Code. 215 ILCS 5/155. Section 155 states,

> In an action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance . . ., or for an unreasonable delay in settling a claim, and it appears that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any of the [statutorily set] amounts.

*Id.* Plaintiffs state the denial of their claim "constitute[s] unreasonable and vexatious delay in the adjustment of plaintiffs' losses." As the court has determined defendant's denial was in accordance with the policy's express terms, defendant is not liable to plaintiff under Section 155 for attorneys' fees and penalties. *See Scudella v. Illinois Farmers Ins. Co.,* 174 Ill.App.3d 245, 528 N.E.2d 218, 222-23 (1988) ("[A]ssertions of legitimate policy defenses and denials based on a policy's express wording are inappropriate for invoking [fees and penalties under Section 155]"). Thus, defendant is entitled to summary judgment on plaintiffs' Count III.

## V.   <u>CONCLUSION</u>

For the above-stated reasons, defendant's motion for summary judgment is **GRANTED** (Doc. 19). Accordingly, plaintiffs' motion for summary judgment is **DENIED** (Doc. 17). Thus, plaintiffs' claims are dismissed with prejudice. The Clerk is instructed to enter judgment accordingly.

      **IT IS SO ORDERED.**

      Signed this 3rd day of July, 2012.

David R. Herndon
2012.07.03
09:54:56 -05'00'

**Chief Judge**
**United States District Court**